Good morning, Your Honors. Jeff Kravitz on behalf of Rodney Hollie. I will reserve two minutes for rebuttal. In this case here, I am certain that the Court has reviewed the extensive briefing and indeed has asked for some additional briefing on a new issue that they certified concerning the voluntariness of the alleged confession or admission that was made in this case and the surrounding circumstances of it. As all sides must agree and as the case was clear about, a totality of the circumstances test is applied and under the general understanding of the totality of the circumstances test, it is true that it is the same test for juveniles and for adults as a matter of overall law. However, we always look to the juvenile status in reference to the maturity of the person who is giving the waiver and is making the admission. And as I have cited in my supplemental brief, I believe that the J.D.B. v. North Carolina case, a recent case of the Supreme Court, absolutely highlights the fact that as a matter of federal law that we seriously give strict scrutiny to any confession and any admission and any waiver made by a juvenile because we even view the issue of whether they are in custody differently based on their age. Well, Counsel, you rely on Tater v. Maddox. Yes. But as I read Tater, it had independent, corroborating evidence to bolster the petitioner's claim that his confession was involuntary. What similar evidence exists here? Well, I would grant you that exact evidence does not exist here, but what I would like to highlight is an issue of the reasons we look at juveniles differently, which is the question of maturity. The word maturity is used in the cases themselves, in the Withrow case that I've cited, and it is the overriding issue, is was the person giving the waiver themselves, separate from the issue of coercion, was they able to make a knowing and voluntary waiver of their rights? And we base this on the question of maturity. Now, something that has been pointed out in this case on page 24 of the Supplemental Brief of the State is that when Rodney Holley was questioned about his admission, he said that he thought the whole thing was a joke. That is the statement he made in court when he was 16 years old a year later. He was facing a murder charge. He had been presented with the police with the statement allegedly of a relative of some sort, that he had been involved in a crime, and he states before the court a year and a half later, I thought the whole thing was a joke. He did not have the level of maturity and sophistication necessary so that he could give a knowing and voluntary waiver looking at the totality of the circumstances. He had a criminal record, did he not? Yes, he did. He was part of a gang. His dad was part of the gang. He had extensive experience in the criminal justice system. Does that go to his maturity in terms of understanding his confession? Well, I would put it to you that joining a gang is an extremely immature thing to do. And there was not actual proof that he was a member of the gang. There was no gang enhancement here. There was some debate about whether or not he was a member of the gang or not. I'll put it to you. But his actions in court showed that he was immature. And there's a long line of Supreme Court cases, including a case that I've cited on the issue of the death penalty in general, in which they say in general we cannot state that a juvenile has the level of capacity to be subject to the death penalty just because of their age. Here we have an actual issue of maturity on the very day that they're claiming he makes a knowing confession. He says he thought the whole thing was a joke. This doesn't show a person who is capable of understanding all of his actions, in this case the nuanced action of whether he's given a waiver of constitutional rights given, again, the totality of the circumstances. But you're arguing that in effect we say as a matter of law he's incapable of making a valid confession. When you have a trial judge who's looking at him, who's listening to him, who's observing him, who's observing people giving contrary testimony, and we just toss that as if it didn't occur? No. I'm not saying that you toss it just as if it didn't occur. I'm saying that the court below did not correctly apply established law to this question and that their determination was unreasonable. Because the very judge who makes the determination notes, well, the guy was joking, so if he's joking, how could he be coerced? No, if he thinks the whole thing was a joke, if he's sitting on a stand laughing, which I don't know if he was laughing at the time, consuming a confession on a murder case, we should say maybe this person was not mature enough to give a voluntary waiver of rights. Okay, but that's not the standard, maybe we should. The issue is was it wrong, fundamentally wrong, essentially as a matter of law based on all the evidence for the judge to conclude that he was capable of making a valid confession? Yes. I believe in this case there was insufficient evidence that the waiver was voluntary under the law. The standards were not properly applied. The issue of his youth and immaturity was not properly applied. And what the courts below have done is they have mechanically applied individual aspects of the totality of the circumstances test. They've said, well, lack of tape recording, you know, that doesn't throw out a confession. Well, that's true. But it is quite interesting as to why there's never any explanation of why it wasn't tape recorded. The officer never says why he did it. At one point he says, well, he didn't give a confession, but then he doesn't even tape record it even though he has the tape recorder with him. When the man does give the confession, doesn't even break it out then, that gives an inference. He was in custody for five hours. That does lead to another questioning, again, of the totality of the circumstances. It's not an issue of the matter of law in every single circumstance. It's an issue of applying the totality of the circumstances to the actual circumstances we have here, which are a 15-year-old in prolonged custody, which is the police failing to follow California law, which does affect how this court reviews these things, which is the fact that it wasn't tape recorded, a fact which is mentioned in Ninth Circuit cases as something which leads one to question the validity of the police tactics below. And it is a substantial issue in this case which leads to a conclusion that it was an unreasonable interpretation. What we have, and if you look at the decisions that have been made, it's a rote checkoff list. Well, the defendant has argued X, but X isn't enough. The defendant has argued Y, but Y isn't enough. The defendant has argued Z, but Z isn't enough. Of course not. Of course each individual element is not. That's what the definition of the totality of the circumstances test is. And if I could move for a second to the second issue which we listed, which was the misjoinder, which was the first issue that was certified. Excuse me, counsel. On that issue, the jury appeared to be very capable of compartmentalizing the evidence because they acquitted him on counts 6 and 9. Doesn't that suggest that even if the court erred in denying the motion this ever, the fact that he was acquitted on two counts showed that the jury was able to differentiate among counts? Well, on this issue, the court here actually has almost no record concerning the other counts. I mean, in my excerpts of records, which are the only ones before the court, I didn't include anything about those counts because obviously it was acquitted of them. I don't include them on an appeal. The state has never supplemented the excerpts of record to discuss them, so I'm not really capable of discussing them in great detail based on the record here before the court. It did show that on this motion this ever, that the ruling was contrary to or an unreasonable application of clearly established federal law. Right. And in this case. What's the clearly established federal law? Well, the clearly established federal law, as I've cited, is that when you cannot convict a person on one crime based on the fact that they've committed another crime, that you cannot use the substantial evidence that there may have been in one case, although I'm arguing now that the confession should be thrown out, so there'd be almost no evidence in that case, with the lesser evidence in the other case to compile them together, which is consistent with this circuit's determination on other cases that have been cited and briefed here. If we look at the alleged cure, I think as I pointed out in my briefs. What kind of Supreme Court case are you referring to? Well, I believe I've cited in my briefs, but I don't have it here in front of me, so I'm going to rest on what I've already cited on that issue. Yeah, we've got 28 seconds left. Okay. I'll wait then. Give 28 seconds in rebuttal. Thank you. May it please the Court, Deputy Attorney General Carlos Dominguez for Respondent. I'll again first address the issues that this Court had us brief on the expended COA, both the Miranda issue and the voluntariness of confession. And if the Court would like, I can also address the last issue, whether E-1 also applies to both of those. So first, to address the first issue on Miranda, again, I'd like to reiterate that the totality of the circumstances standard gives state courts flexibility, both in the Miranda aspect and to determine whether statements made were coerced. However, this Court applies the reasonableness test to see whether the state court reasonably applied that test. Also, moving on to D-2, the Court also must determine whether the state court reasonably determined facts based on the evidence presented at state court. Could I ask in that connection, did the decision of the police officers not to videotape the confession have anything to do with the reasonableness of what they did? I don't believe so. Why not? I cited numerous cases, obviously, that the police, they don't have a duty to record statements made. It would have been a lot easier, obviously, in our case, if they actually videotaped or audiotaped. And they did it in other cases. They just decided not to videotape this confession. Correct, Your Honor. And I think there was testimony from Detective Conant that they had. There was no policy. I think from the police department to videotape those statements. But sometimes in practice, they did do it. However, that was for the state court, in looking at the totality of the circumstances, whether or not to believe him. I mean, he was there on the stand. And I believe most of this case is going to come down to whether the trial court was in the best position to believe the detective, whether he was lying or not, why he decided not to tape the conversation. Another part of this case, I think, comes about in whether the petitioner actually asked to speak to his father. Again, here the state court determined that petitioner was not telling the truth when he testified at the suppression hearing, that he, I think seven or eight times by the end of the suppression hearing, he said he requested to speak to his father. Both the detective, Detective Conant and Detective Mercado, they both testified that he never did ask to speak to his father. So I think even if the court can get past that and somehow come to the conclusion that he did request to speak to his father and go around the trial court's finding, even that's not enough. I think a request to speak to a parent is not the same as a request to speak to an attorney. So in order to have the... That's very, very close. It's very, very close, I think, only if there's other circumstances. I think Taylor Reed Maddox was very clear in that a request by itself and also Michael C., a request to speak to a parent is not enough. That request must be, there must be other circumstances surrounding that request where I want to speak to my father because I want to have them call an attorney. There is no clearly established Supreme Court law that's saying a request to speak to your father is the same as a request... I don't understand why you're arguing this. If we find that the judge was wrong in finding that he did not ask to speak to his father, then this whole thing is going to start to unravel. What basis would we have to pull that fact out of the record and determine credibility here? But if we do, I think that your ability to put the brakes on it where you're choosing to is very unlikely to succeed. So explain to me on what basis we could pull out that one fact. I completely agree, Your Honor, and that's why I said I think it comes down to if this court decides, and I think it should, that the trial court was in the best position to determine credibility. I think once, if the court starts to go down that path, it's going to be very hard because then at that point, then the court is not giving any deference to the state court. Well, I agree with you, but since you're arguing it, if we find that he erred in that credibility determination, it isn't very far to go to find that his determination of the facts was unreasonable. If the court determines that the trial court unreasonably applied the totality standard, then I agree, it could easily unravel. But I think the court doesn't have to go that far. I think the court should give deference both on how the court applied the totality standard and how the court determined the facts in light of the evidence presented. If we were to find that Howie asked to speak to his parent, then the police officers lied. You can't say anything else. The police officers would have lied if we made that determination. Correct. I think that's completely right, but I don't know how you could do it in this circumstance when you have testimony from two police officers and a testimony of the petitioner and a finding by the trial court, a credibility determination that I'm going to believe the police officers. Well, I'm asking you these questions because you raised the issue. I understand. I just wanted to raise it because I know it was an issue at the trial level and it was an issue at the court of appeal and, again, on habeas. So I just brought it up just for that fact. As far as I think I'll move briefly to address the Ms. Joinder issue, I agree with your Honor that there is no clear established law, and I know the report and recommendation did not address it and we did not address it, our office did not address it on habeas, but I don't think U.S. v. Lane is clear established federal law on Joinder. I think Collins v. Reynolds 603 F3D 1127 correctly held that that case, U.S. v. Lane, is not applicable in this context because it dealt with federal rules and a federal appeal. And based on that fact, I think you don't even have to go that road. There is no clear established federal law there. Unless the Court has any questions, I'd like to conclude. Okay. Thank you. I just ask this Court to affirm the District Court's decision in denying relief. Thank you. Thank you, Your Honors, for my 22 seconds. First, I will rely on Lane and on the cases that I have cited. We'll give you a full minute. Thank you. Very generous of you. In that, I do not believe that there are ñ You have a minute and a half now. Well, if I say thank you again, maybe I'll get a half hour. But if the issue is, does the Supreme Court recognize that a denial of a severance motion can be prejudicial and lead to a constitutional violation of due process? I think that United States v. Lane does hold for that. And I think that the other cases that I've cited, such as United States v. Lewis, holds to the general constitutional principle of what due process means, even if these cases were taken in the technical aspect of a case that was in federal court, because the ideas of due process that are implicated towards the states and apply to the states about fair trials have generally been held by the courts to be uniform. And I don't see any reason to think that the Supreme Court has made any ruling contrary, that if there was a case, let's assume that we had before us a perfect case, in which the prejudice from one case was extreme, that therefore you can't argue that these cases should be severed. That wouldn't make any sense. And indeed, this circuit has ruled that cases should be severed. And so I don't think there's any question. In the circuit of that case that you have in mind, did that involve having separate trials, separate counts of a indictment that involved one defendant? Well, yes. The case that I've cited is Dean v. Calderon, which is a Ninth Circuit case, 163 F. 3rd. 173. And in that case, a person was convicted of more than one crime, and the court said that it was disallowed. It was two murder cases. It was two what? Excuse me? It was two what? Two murder cases. Now, and so that is precedent still in the Ninth Circuit. I've not seen any case that says that it is not precedential in the Ninth Circuit still. And that case has been cited, and it was a case involving two murder cases in which there was substantial evidence on one and not substantial on the other, and hence the court made a determination that this should have been joined and that it was impermissible that the person was tried twice. Would harmless error analysis apply in this case, or any of these cases, assuming that the court did error, and we have evidence the jury could distinguish among counts, could harmless error analysis apply then? Well, as I've argued in my briefs, I believe that the burden of showing harmlessness would bear to the state here in this case. And here, I would also state that the error was not harmless. So let me make the first claim. I do not believe the error was harmless here if it occurred. I believe that the error was substantial here in that the witnesses were, and it's interesting because this is implied in the state's briefs, that the jury was led to believe that there were two crimes committed, because there were two crimes committed, in which young black men were involved. And Rodney Holley was the only young black man on trial for those two crimes. And they had evidence, because they had an admission, which we've already discussed in one of those cases. And they used that as substantial evidence to show that he was involved in this crime spree. And that's what the case was about. It was about tying together cases based on this crime spree. We understand your argument. Thank you, Your Honor. With that, I'll rest. Thank you. Thank you. That is submitted.
judges: Lynn, Pregerson, Nelson